# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **MATTHEW PETRIE,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 3:11-CV-0715-M** |
| **CITY OF GRAPEVINE and EDWARD SALAME in his individual capacity,** | **JURY DEMANDED**<br><br>**United States District Judge Barbara M.G. Lynn** |
| **Defendants.** | |

---

## APPENDIX IN SUPPORT OF MATTEW PETRIE'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF GRAPEVINE'S MOTION FOR ENTRY OF FINAL JUDGMENT

---

Amy E. Gibson
Texas State Bar No. 00793801

David L. Wiley
Texas State Bar No. 24029901

**Gibson Wiley PLLC**
1700 Commerce Street, Suite 1570
Dallas, Texas 75201-5302
Telephone:  (214) 522-2121
Facsimile:  (214) 522-2126
E-Mail Addresses:

amy@gwfirm.com
david@gwfirm.com

ATTORNEYS FOR
MATTHEW PETRIE

## <u>INDEX</u>

**DESCRIPTION**                                                    **APPENDIX PAGE**

City ordinance on self-insurance and risk management**…………………………**    **4**

City ordinance on officer and employee liability plan**…………………………..**    **17**

Respectfully submitted,

s/ David L. Wiley
_____

Amy E. Gibson
Texas State Bar No. 00793801

David L. Wiley
Texas State Bar No. 24029901

**Gibson Wiley PLLC**
1700 Commerce Street, Suite 1120
Dallas, Texas 75201-5381
Telephone: (214) 522-2121
Facsimile: (214) 522-2126

E-Mail Addresses:

amy@gwfirm.com
david@gwfirm.com

ATTORNEYS FOR
MATTHEW PETRIE

## <u>CERTIFICATE OF SERVICE</u>

On April 23, 2014, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

s/ David L. Wiley
_____

David L. Wiley

**Grapevine, Texas, Code of Ordinances >> PART II - CODE OF ORDINANCES >> Chapter 2 - ADMINISTRATION >> ARTICLE II. SELF-INSURANCE AND RISK MANAGEMENT >>**

---

**ARTICLE II. SELF-INSURANCE AND RISK MANAGEMENT** [3]

DIVISION 1. - GENERALLY
DIVISION 2. - ESTABLISHMENT OF PROGRAM
DIVISION 3. - REGULATION OF RISK MANAGEMENT FUND
DIVISION 4. - ADMINISTRATION OF CLAIMS
DIVISION 5. - RISK MANAGEMENT

---

FOOTNOTE(S):

---

*--- (3) ---*
*Editor's note—* Ord. No. 87-51, §§ 1.01—7.01, adopted Aug. 18, 1987, being not specifically amendatory of this Code, has been included to read as set out in Art. II, Divs. 1—5, at the discretion of the editor. *(Back)*

---

**Grapevine, Texas, Code of Ordinances >> PART II - CODE OF ORDINANCES >> Chapter 2 - ADMINISTRATION >> ARTICLE II. - SELF-INSURANCE AND RISK MANAGEMENT >> DIVISION 1. GENERALLY >>**

---

**DIVISION 1. GENERALLY**

Sec. 2-21. Definitions.
Sec. 2-22. Interpretation.
Sec. 2-23. Report to city council on program status.
Sec. 2-24. Alteration and termination of program.
Sec. 2-25. Effective date of program; duration.
Sec. 2-26. Conflicts with other ordinances.
Secs. 2-27—2-35. Reserved.

## Sec. 2-21. Definitions.

The following terms, as used in this article, have the following meanings unless the context requires otherwise:

*Act* includes an omission or failure to act.

*Administrative expenses* means the expenses of administering the program, to the extent designated as such by the risk management board, including but not limited to the following:

(1) The compensation paid to the risk manager or to any risk management consultant;

(2) The compensation paid to any claims adjuster or any professional actuary;

(3) The expenses of defending any claim, including but not limited to the following:

    (a) Compensation paid to expert witnesses;

    (b) Attorneys' fees and expenses and court costs; and

    (c) Investigation expenses;

(4) Any expenses incurred by the city in the course of any financing undertaken to provide funding for the fund or to repay any obligation incurred by the city in the course of such a

APPENDIX 000004

(5)  financing; or

The cost of program insurance, including any compensation paid to brokers, that is purchased in accordance with this article.

*Advertising injury* means any injury to a person that results from the promotional activities of the city, if such injury arises out of any one or more of the following acts:

(1)  Piracy, plagiarism, unfair competition or idea misappropriation under implied contract; or

(2)  Infringement of copyright, title or slogan, registered trade mark, service mark or trade name.

*Advertising injury claim* means a program general liability claim in which the damages are asserted to be the result of advertising injury.

*Annual period* means the period of 12 consecutive calendar months beginning on the effective date of the program and on each successive anniversary of the effective date of the program.

*Assumed general liability claim* means any plan claim for which the city, in the judgment of the risk management board, is liable.

*Assumed risks* means the risks for which the city has assumed liability pursuant to the Article III of this chapter.

*Bodily injury* means any physical harm or physical illness sustained by any individual, including a resulting death.

*City* means the City of Grapevine, Texas.

*City attorney* means the city attorney of the city.

*City council* means the city council of the city.

*City manager* means the city manager of the city or, if none, the city's chief executive officer having the responsibility for the administration of the city's affairs.

*City secretary* means the city secretary or city clerk, as applicable of the city.

*Claim* means any claim or suit against the city, whether in its capacity as a municipal corporation or as an insurer under the Municipal Workers' Compensation Law, or any claim or suit against any plan member that the city is responsible for defending under Article III of this chapter, regardless of whether any damages resulting from such claim or suit are permitted under this article to be paid from the fund.

*Claims adjuster* means any person designated as a claim adjuster as provided by section 2-67 of this article.

*Corporate general liability claim* means any corporate general liability damages, together with the corporate general liability expenses that result from the claim giving rise to such corporate general liability damages, but does not include a workers' compensation payment.

*Corporate general liability conduct* means any of the following:

(1)  Any error or omission that causes injury; or

(2)  Any other conduct of the city or a plan member that causes an injury.

*Corporate general liability damages* means the damages for which the city, in the judgment of the risk management board, is liable as a result of a claim arising from corporate general liability conduct.

*Corporate general liability expenses* means the court costs, prejudgment and post-judgment interest, attorneys, fees, and other expenses or costs for which the city, in the judgment of the risk management

APPENDIX 000005

board, is liable as a result of a claim giving rise to corporate general liability damages.

*Corporate general liability risks* means the risks for which the city, as a municipal corporation, may be held liable by operation of law in the course of performing its governmental or proprietary functions.

*Damages* means compensatory damages, punitive damages, special damages, or any other classification of damages that lawfully may be awarded against the city or a plan member as a result of a claim.

*Error* or *omission* means any act of a plan member that results in or constitutes an erroneous or improper discharge of such plan member's official duties for the city, including the making of an incorrect statement, but that does not constitute legally actionable fraud or an intentional or knowing breach of duty.

*Excluded payment* means any of the following payments:

(1) The payment of a program claim that is not made while the program is in effect in accordance with applicable claims administration procedures;

(2) The payment of any program claim involving damages that arise from the exercise by the city of its power of eminent domain;

(3) The payment of all or that portion of any program claim, or of any other item for which a withdrawal from the fund is permitted by section 2-51(a) of this article, that, in lieu of payment from the fund, can be paid from:

    (a) Any insurance proceeds available to the city, including but not limited to casualty or liability insurance, workers' compensation insurance or property insurance;

    (b) The proceeds of any insurance carried under any health, accident or similar plan of benefits provided by the city; or

    (c) Any fund, reserves or other source of payment available to the city that has been designated or otherwise set aside for such purpose;

(4) The payment of any program general liability claim arising from an injury that results from the distribution, whether by sale, gift or otherwise, of an alcoholic beverage, other than a distribution at an activity or function that is incidental to the city's business, that (i) is in violation of the law, (ii) is to a minor or to an individual who is under the influence of alcohol, or (iii) causes or contributes to the intoxication of any individual;

(5) The payment of any program claim arising from an injury that results from declared or undeclared war, including civil war, insurrection, rebellion or similar hostility, or any act or condition incident to war; or

(6) The payment of any program claim:

    (a) In which the city's liability exists by virtue of the Texas Tort Claims Act, V.T.C.A., Civil Practice and Remedies Code § 101.001 et seq., regardless of whether the city is a defendant, that exceeds the limits on liability applicable be to the city under that statute;

    (b) In which the city's liability exists by virtue of the Municipal Workers' Compensation Law that exceeds the limits on liability applicable to the city under that statute;

    (c) That the city is otherwise granted immunity from paying or precluded from paying by law; or

    (d) In an amount that exceeds any limits prescribed by this article on the amounts of withdrawals that may be made from the fund to pay program claims.

*Excluded property* means the property identified in Schedule A [on file in the city secretary's office] to this article, subject to any qualifications, limitations or exceptions therein prescribed.

*Extra expense* means the amount of the excess, if any, of the total cost during any period of restoration of loss covered property resulting from a program property loss that is chargeable to the

conduct of the business of the owner of such property over the total cost that would normally have been incurred to conduct such business during such period if no program property loss had occurred.

*Finance director* means the individual having the responsibility for the management of the city's financial affairs.

*Fund* means the insurance fund to be created by resolution or ordinance of the city pursuant to section 2-40 of this article.

*Fund surplus* means the amount of money in the fund that is in excess of the amount that, in the opinion of a professional actuary, is required to maintain the fund on an actuarially sound basis, to the extent reasonably practicable, for the period of time and the risks of loss for which it is then funded.

*Injury* means any of the following injuries:

(1) Advertising injury;
(2) Personal injury;
(3) Property damage;
(4) Regulatory injury.

*Law* includes the federal and Texas constitutions and statutes, the city charter and ordinances, any administrative rules having the force and effect of law, and any controlling judicial decisions applicable to the city.

*Loss covered property* means any of the following property that is not excluded property:

(1) Any building or other structure or other real property, other than land, owned or leased by the city; and
(2) Any tangible personal property that:
    (a) Is owned by the city; or
    (b) Is owned by any person other than the city if:
        1. The property is in the city's custody;
        2. The city is required by law or contract to insure the property; or
        3. The person is a plan member and the property is in use for city purposes at the express direction of the city.

*Municipal Workers' Compensation Law* means V.T.C.A., Labor Code § 504.001 et seq.

*Occurrence* means an episode, an incident or series of related incidents, or an event or series of related events that results in compensable injury to one or more persons.

*Person* includes an individual; partnership, trust or other association; corporation; or governmental entity or agency.

*Personal injury* means any of the following injuries to any person:

(1) Bodily injury;
(2) Mental harm, anguish or illness, regardless of whether accompanied by bodily injury; or
(3) Any injury, other than property damage, advertising injury or regulatory injury, arising out of any one or more of the following acts:
    (a) False or wrongful arrest, detention or imprisonment or malicious prosecution;
    (b) Wrongful entry or eviction or other invasion of the right of private occupancy;
    (c) Discrimination or sexual harassment;
    (d) Publication or utterance of a libel or slander or other disparaging or defamatory

APPENDIX 000007

material, or in violation of an individual's right of privacy; or

(e)     Humiliation, false or improper service of process or violation of civil or property rights.

*Personal injury claim* means any program general liability claim in which the damages are asserted to be the result of personal injury.

*Plan claim* means any plan claim as defined in Article III of this chapter.

*Plan loss expenses* means any plan loss expenses as defined in Article III of this chapter.

*Plan member* means any plan member as defined Article III of this chapter.

*Program* means the City of Grapevine Self-Insurance and Risk Management Program established by section 2-36 of this article.

*Program claim* means any:

(1)     Program general liability claim;
(2)     Workers' compensation payment; or
(3)     Program property loss.

*Program general liability claim* means any assumed general liability claim or any corporate general liability claim.

*Program insurance* means any insurance, other than the self-insurance provided by the fund, that is obtained by the city pursuant to section 2-83 of this article.

*Program property loss* means any economic loss that, in the judgment of the risk management board, is sustained by the owner of loss covered property as a result of property damage to such loss covered property that is caused by any peril, including, without limitation, any act of God, theft or vandalism, but does not include the following:

(1)     A loss resulting from normal wear and tear, depletion, deterioration, corrosion or erosion;
(2)     A loss resulting from the interruption of the conduct of the business of the owner of the loss covered property, unless such loss is an extra expense.

*Program risks* means any of the following risks:

(1)     The assumed risks;
(2)     The corporate general liability risks;
(3)     The workers' compensation risks;
(4)     The property loss risks.

*Property damage* means any damage to or destruction of tangible property or the loss of use of tangible property.

*Property damage claim* means a program general liability claim in which the damages are asserted to be the result of property damage.

*Property loss risks* means the risks that can result in property loss.

*Regulatory injury* means any economic loss sustained by a person as a result of any act by the city in the performance of its regulatory or property acquisition functions.

*Regulatory injury claim* means a program general liability claim in which the damages are asserted to be the result of regulatory injury.

*Risk management board* means the risk management board created by section 2-37 of this chapter.

APPENDIX 000008

*Risk manager* means the person serving as the risk manager pursuant to section 2-81 of this chapter.

*Termination date* means any date of termination of the program specified by ordinance or resolution of the city.

*Workers' compensation payment* means any payment of compensation, benefits, expenses or other charges for which the city, in the judgment of the risk management board, is liable as an insurer under the Municipal Workers' Compensation Law as a result of an injury to an employee of the city.

*Workers' compensation risks* means the risks for which the city may be held liable under the Municipal Workers' Compensation law.

*(Ord. No. 87-51, § 1.01, 8-18-87)*

## Sec. 2-22. Interpretation.

(a)   Whenever the context requires:

(1)   References in this article of the singular number shall include the plural and vice versa; and

(2)   Words use in this article denoting gender shall be construed to include the masculine, feminine and neuter.

(b)   The titles given to any division or section of this article are for convenience only and are not intended to modify or affect the meaning of this article.

*(Ord. No. 87-51, § 1.02, 8-18-87)*

## Sec. 2-23. Report to city council on program status.

The risk management board, at least quarterly, shall report to the city council on the status and experience of the program, including the financial status of the fund.

*(Ord. No. 87-51, § 6.01, 8-18-87)*

## Sec. 2-24. Alteration and termination of program.

(a)   Subject to subsection (b) of this section, the city, by ordinance, may alter the program from time to time or terminate the program at any time without notice to any plan member or other person.

(b)   The city, by agreement approved by the city council, may limit its right to alter or terminate the program.

*(Ord. No. 87-51, § 6.02, 8-18-87)*

## Sec. 2-25. Effective date of program; duration.

The program shall become effective on October 1, 1987, and shall continue in effect until 5:00 p.m. on the termination date.

*(Ord. No. 87-51, § 6.03, 8-18-87)*

## Sec. 2-26. Conflicts with other ordinances.

This article shall not operate to repeal or affect any other ordinance of the city, except to the extent that the provisions thereof are inconsistent or in conflict with this article, in which event, such inconsistent or conflicting provisions in such other ordinance are hereby repealed.

*(Ord. No. 87-51, § 7.01, 8-18-87)*

APPENDIX 000009

## Secs. 2-27—2-35. Reserved.

Grapevine, Texas, Code of Ordinances >> PART II - CODE OF ORDINANCES >> Chapter 2 - ADMINISTRATION >> ARTICLE II. - SELF-INSURANCE AND RISK MANAGEMENT >> DIVISION 2. ESTABLISHMENT OF PROGRAM >>

### DIVISION 2. ESTABLISHMENT OF PROGRAM

Sec. 2-36. Program established.
Sec. 2-37. Risk management board created.
Sec. 2-38. Powers, duties and functions of risk management board generally.
Sec. 2-39. Risk management board to administer program.
Sec. 2-40. Insurance fund.
Sec. 2-41. Capitalizing the fund.
Sec. 2-42. Risk retention policy.
Sec. 2-43. No admission of liability for claims.
Secs. 2-44—2-50. Reserved.

## Sec. 2-36. Program established.

The city hereby establishes the city of Grapevine Self-Insurance and Risk Management Program, which shall consist of the policies, rights and duties embodied in this article. The program shall be implemented and administered as provided by this article.

*(Ord. No. 87-51, § 2.01, 8-18-87)*

## Sec. 2-37. Risk management board created.

(a) The risk management board is hereby created.

(b) The risk management board shall be composed of the following five members:

(1) The city manager, as chairman;

(2) A deputy or assistant city manager of the city designated by the city manager;

(3) The finance director;

(4) The city attorney; and

(5) The risk manager.

(c) The city secretary, or an assistant city secretary designated by the city secretary, shall serve as the secretary of the risk management board.

(d) The risk management board may select such other officers as it determines appropriate from among its members.

*(Ord. No. 87-51, § 2.02, 8-18-87)*

## Sec. 2-38. Powers, duties and functions of risk management board generally.

(a) The risk management board may exercise the powers and shall perform the duties and functions prescribed by this article, Article III of this chapter and any other ordinance of the city.

(b) The risk management board may establish rules governing the conduct of its affairs.

(c) The risk management board may take such actions as are necessary to enable it to property and effectively exercise the powers and perform the duties and functions delegated to it under this article

APPENDIX 000010

or any other ordinance of the city.

*(Ord. No. 87-51, § 2.03, 8-18-87)*

## Sec. 2-39. Risk management board to administer program.

The risk management board is responsible for the administration of the program in accordance with this article subject to the superior authority of the city council. In the course of carrying out this responsibility, the risk management board shall interpret and apply the provisions of this article and Article III of this chapter.

*(Ord. No. 87-51, § 2.04, 8-18-87)*

## Sec. 2-40. Insurance fund.

(a)    An insurance fund may be created by a subsequent resolution or ordinance of the city for the purpose of providing capital for the program to be used as provided by this article.

(b)    The resolution or ordinance creating the fund shall provide that no person, including any plan member, other than the city, has, or is granted or vested with, any right to any of the money in the fund.

*(Ord. No. 87-51, § 2.05, 8-18-87)*

## Sec. 2-41. Capitalizing the fund.

The fund may be funded with money:

(1)    Provided by contributions made from time to time upon the order of the city council, from budgeted, appropriated and currently available city money; or

(2)    Derived from time to time by the city, pursuant to agreements providing any lawfully available source of funding.

*(Ord. No. 87-51, § 2.06, 8-18-87)*

## Sec. 2-42. Risk retention policy.

It is the policy of the city, subject to budgetary and general economic conditions, to self-insure against all or any program risks, as prescribed by the city, through the fund and to provide such self-insurance by depositing money in the fund in amounts sufficient to provide for the defined self-insurance coverages authorized by this article. It is further the policy of the city, under the appropriate conditions, to obtain program insurance as provided by this article.

*(Ord. No. 87-51, § 2.07, 8-18-87)*

## Sec. 2-43. No admission of liability for claims.

The city, by virtue of establishing and maintaining the program, is not admitting liability for any claim. The city reserves the right to assert any defense to the payment or collection of any claim that is lawfully available to it.

*(Ord. No. 87-51, § 2.08, 8-18-87)*

## Secs. 2-44—2-50. Reserved.

**Grapevine, Texas, Code of Ordinances >> PART II - CODE OF ORDINANCES >> Chapter 2 - ADMINISTRATION**

APPENDIX 000011

>> ARTICLE II. - SELF-INSURANCE AND RISK MANAGEMENT >> DIVISION 3. REGULATION OF RISK MANAGEMENT FUND >>

---

**DIVISION 3. REGULATION OF RISK MANAGEMENT FUND**

---

Sec. 2-51. Authorized withdrawals from fund.
Sec. 2-52. Control of withdrawals from fund.
Sec. 2-53. Method of withdrawal from fund.
Sec. 2-54. Withdrawal of fund surplus.
Sec. 2-55. Limits on amount of withdrawals for program claims.
Sec. 2-56. Investments of fund.
Secs. 2-57—2-65. Reserved.

## Sec. 2-51. Authorized withdrawals from fund.

(a)   Money may be withdrawn from the fund only for the following purposes:

    (1)   To reimburse the city for administrative expenses;

    (2)   To pay any program claim;

    (3)   To pay any fund surplus to the city;

    (4)   To retire, by scheduled payment, prepayment, defeasance or otherwise, any obligation of the city incurred in connection with providing funding for the fund; or

    (5)   To reimburse the city for any payment made under any agreement to provide funding for the fund that is permitted to be paid to the city pursuant to such agreement, or, to the extent and under the terms and conditions provided in such agreement, to cure a default in payment by the city under such agreement.

(b)   No withdrawal from the fund may be made except in accordance with this article.

(c)   Money may not be withdrawn from the fund to make any excluded payment.

*(Ord. No. 87-51, § 3.01, 8-18-87)*

## Sec. 2-52. Control of withdrawals from fund.

(a)   Subject to the regulations and limitation provided by this article, the determination of whether money in the fund is to be withdrawn is in the discretion of the risk management board.

(b)   An aggregate amount exceeding $250,000.00 may not be withdrawn from the fund to pay the program claims of any one claimant that arise from the same occurrence, unless the city council approves a greater amount for that purpose.

*(Ord. No. 87-51, § 3.02, 8-18-87)*

## Sec. 2-53. Method of withdrawal from fund.

Withdrawals from the fund may be made, upon the order of the risk management board, by check or draft drawn on the fund.

*(Ord. No. 87-51, § 3.03, 8-18-87)*

## Sec. 2-54. Withdrawal of fund surplus.

Fund surplus may not be withdrawn from the fund more often than once a year.

*(Ord. No. 87-51, § 3.04, 8-18-87)*

APPENDIX 000012

## Sec. 2-55. Limits on amount of withdrawals for program claims.

(a)  The aggregate amount of withdrawals from the fund to pay all corporate general liability claims that arise from any one occurrence may not exceed the following amounts for the following respective classifications of corporate general liability claims:

(1)  For personal injury claims: $250,000.00 per person; $500,000.00 total;

(2)  For property damage claims: $100,000.00;

(3)  For advertising injury claims: $500,000.00;

(4)  For regulatory injury claims: $500,000.00.

(b)  The aggregate amount of withdrawals from the fund to pay all assumed general liability claims that arise from any one occurrence may not exceed $500,000.00.

(c)  The aggregate amount of withdrawals from the fund in any one annual period to pay program general liability claims may not exceed the amount established by the city in its budget for such annual period.

(d)  Subject to subsection (h) of this section, the aggregate amount of withdrawals from the fund to pay all program property losses that arise from any one occurrence may not exceed $500,000.00.

(e)  Subject to subsection (h) of this section, the aggregate amount of withdrawals from the fund in any one annual period to pay program property losses may not exceed the amount established by the city in its budget for such annual period.

(f)  Subject to subsection (h) of this section, the aggregate amount of withdrawals from the fund to pay workers' compensation payments that arise for any one occurrence may not exceed $500,000.00.

(g)  Subject to subsection (h) of this section, the aggregate amount of withdrawals from the fund in any one annual period to pay workers' compensation payments may not exceed the amount established by the city budget for such annual period.

(h)  A withdrawal from the fund may be made that causes the limit on aggregate withdrawals prescribed by subsections (d), (e), (f), or (g) of this section to be exceeded if such withdrawal does not render the fund actuarially unsound, as determined by professional actuary.

*(Ord. No. 87-51, § 3.05, 8-18-87)*

## Sec. 2-56. Investments of fund.

The risk management board shall direct the investment of money in the fund in investments that are eligible as lawful investments for other public funds of the city.

*(Ord. No. 87-51, § 3.06, 8-18-87)*

## Secs. 2-57—2-65. Reserved.

**Grapevine, Texas, Code of Ordinances >> PART II - CODE OF ORDINANCES >> Chapter 2 - ADMINISTRATION >> ARTICLE II. - SELF-INSURANCE AND RISK MANAGEMENT >> DIVISION 4. ADMINISTRATION OF CLAIMS >>**

**DIVISION 4. ADMINISTRATION OF CLAIMS**

Sec. 2-66. Administration of claims generally.

Sec. 2-67. Claims adjusters.

Sec. 2-68. Defense for claims.

Sec. 2-69. Settlement of claims.

Sec. 2-70. Payment of noncovered claims.

Secs. 2-71—2-80. Reserved.

APPENDIX 000013

## Sec. 2-66. Administration of claims generally.

The risk management board is responsible for the administration of claims.

(Ord. No. 87-51, § 4.01, 8-18-87)

## Sec. 2-67. Claims adjusters.

(a)    The risk management board may allow one or more claims adjusters, each a claims adjuster, to adjust or otherwise administer claims for the city.

(b)    Each person that is to serve as a claims adjuster shall be designated by the risk management board. A claims adjuster may be selected from among the city's administrative staff, or a professional claims handling or management service may be retained as a claims adjuster.

(c)    If a professional claims handling or management service is to be retained as a claims adjuster, such employment shall be on a nonexclusive basis, and the contract under which such service is retained shall be made terminable by the city upon the expiration of a reasonable term fixed by the risk management board.

(d)    Each claims adjuster shall be directly responsible to the risk manager and shall follow any claims administration policies and procedures established by the risk management board.

(Ord. No. 87-51, § 4.02, 8-18-87)

## Sec. 2-68. Defense for claims.

(a)    The risk management board shall direct the defense of the city in claims.

(b)    The risk management board, under supervision of the city attorney may retain attorneys, experts and investigators in connection with the defense of any claim.

(Ord. No. 87-51, § 4.03, 8-18-87)

## Sec. 2-69. Settlement of claims.

(a)    The risk management board, in its discretion, may settle claims, subject to the limitations prescribed by this section.

(b)    The claims of any one claimant that arise from the same occurrence may not be settled for an aggregate amount exceeding $500,000.00 without the approval of the city council.

(c)    The risk management board may authorize claims adjusters to settle, without the advance approval of the risk management board, the claims of any one claimant that arise from the same occurrence for an aggregate amount not exceeding $500,000.00.

(Ord. No. 87-51, § 4.04, 8-18-87)

## Sec. 2-70. Payment of noncovered claims.

Any claim that the city is legally obligated to pay that is not a program claim or, if a program claim, that is in excess of the amount permitted under this article to be withdrawn from the fund to pay such program claim, may be paid by the city only at such times and from such sources of payment as are required by law.

(Ord. No. 87-51, § 4.05, 8-18-87)

## Secs. 2-71—2-80. Reserved.

APPENDIX 000014

**Grapevine, Texas, Code of Ordinances >> PART II - CODE OF ORDINANCES >> Chapter 2 - ADMINISTRATION >> ARTICLE II. - SELF-INSURANCE AND RISK MANAGEMENT >> DIVISION 5. RISK MANAGEMENT >>**

---

**DIVISION 5. RISK MANAGEMENT**

Sec. 2-81. Risk manager.
Sec. 2-82. Risk management activities generally.
Sec. 2-83. Program insurance.
Sec. 2-84. Cooperation with city administration.
Secs. 2-85—2-100. Reserved.

## Sec. 2-81. Risk manager.

(a)    The program shall include the services of a risk manager (the risk manager).

(b)    The risk manager may be an individual selected by the city manager from among the city's administrative staff or an individual selected by the city manager who is hired as a city employee, or a professional risk management service may be retained as the risk manager. If a professional risk management service is to be retained as the risk manager, the selection of the service shall be made by the city manager, subject to the approval of the risk management board.

(c)    The risk manager shall perform the duties and functions prescribed by this article subject to the superior authority of the city manager, the risk management board, and the city council.

(Ord. No. 87-51, § 5.01, 8-18-87)

## Sec. 2-82. Risk management activities generally.

(a)    The risk manager shall engage in the following activities:

(1)    Identify and quantify, to the extent practicable, the risks that have the potential to result in loss to the city or plan members resulting from claims;

(2)    Subject to the approval of the city manager and the risk management board, devise and implement programs designed to reduce the city's and the plan members' exposure to loss due to program risks, including but not limited to risk assumption, risk reduction, risk retention and risk transfer, including the purchase of program insurance;

(3)    Develop and maintain for the city council and the risk management board an information system, in coordination with any existing systems of the city, for the efficient recording of program information, including but not necessarily limited to information concerning claims, plan loss expenses and corporate damages expenses, administrative expenses, withdrawals from the fund and program insurance premiums;

(4)    Perform such other services as may be specified by the city manager, the risk management board, or the city council.

(b)    Subject to applicable budgetary restrictions and with the consent of the city manager and the risk management board, the risk manager may implement and supervise the safety and other risk management policies and procedures that are to be followed by the city.

(Ord. No. 87-51, § 5.02, 8-18-87)

## Sec. 2-83. Program insurance.

(a)    Insurance (program insurance) may be obtained under the following circumstances:

(1)    As excess coverage over that provided by the fund, as reinsurance for the fund, or as first-dollar coverage in lieu of that provided by the fund (which may result in converting coverage provided by the fund into excess coverage) if, in each case, the insurance is obtainable on a

APPENDIX 000015

fiscally sound basis, giving consideration to the investment opportunities for the fund and any shock-loss exposure of the city due to the program risks;

(2)   When services that are necessary to effectively administer the program can be obtained only through the obtaining of the insurance;

(3)   When the city is required by contract or law to obtain the insurance; or

(4)   When the limitations on coverage under the fund do not result in long-term economic advantage to the city, and the insurance obtained either does not contain, or offsets or reduces, such limitations.

(b)   The procurement of program insurance shall be coordinated by the risk manager and approved by the risk management board and the city council.

(c)   Program insurance shall be obtained from sources determined to be in the best interests of the city. No particular insurance or financial quality rating is required, but the insurance provider must be in excellent financial condition as determined by the risk management board.

(d)   When practicable, the remuneration of agents or brokers providing insurance services to the city pursuant to this article shall be on a fee basis.

*(Ord. No. 87-51, § 5.03, 8-18-87)*

## Sec. 2-84. Cooperation with city administration.

To promote the efficient and effective administration of the program, the various department heads and other employees having administrative responsibilities for the city are encourage and directed to cooperate with the risk manager.

*(Ord. No. 87-51, § 5.04, 8-18-87)*

## Secs. 2-85—2-100. Reserved.

APPENDIX 000016

**Grapevine, Texas, Code of Ordinances >> PART II - CODE OF ORDINANCES >> Chapter 2 - ADMINISTRATION >> ARTICLE III. OFFICER AND EMPLOYEE LIABILITY PLAN >>**

---

ARTICLE III. OFFICER AND EMPLOYEE LIABILITY PLAN [4]

Sec. 2-101. Definitions.
Sec. 2-102. Plan established.
Sec. 2-103. Defense and settlement.
Sec. 2-104. Payment of plan claims.
Sec. 2-105. Legal representation.
Sec. 2-106. Subrogation.
Sec. 2-107. Determination of coverage.
Sec. 2-108. No creation of cause of action.
Sec. 2-109. Administration of plan.
Sec. 2-110. Amendment, repeal and termination.
Sec. 2-111. Conflicts with other ordinances.
Sec. 2-112. Payments subject to appropriation.
Sec. 2-113. No right to fund by plan member.
Secs. 2-114—2-120. Reserved.

## Sec. 2-101. Definitions.

The following terms, as used in this article shall have the following meanings unless the context requires otherwise:

*Act* includes an omission or failure to act.

*City vehicle* means a vehicle or any mobile equipment leased or owned by the city.

*Coverage determination action* means an action by a plan member to determine coverage under the plan, pursuant to section 2-107 of this article.

*Coverage determination expenses* means the reasonable expenses incurred by a plan member in connection with a coverage determination action, including, but not limited to, cost awarded by a court and attorneys' that the city is not precluded from paying by law.

*Covered act* means any act of a plan member that occurs during the discharge of the member's official duties for the city, and is within the scope of the member's office, employment or assigned volunteer work with the city, as applicable.

*Excluded action* means any claim or suit against a plan member:

(1)    By the city;

(2)    That results from an intentional or knowing violation of a penal law, including an administrative agency rule having the force and effect of law, committed by, or with the knowledge and consent of, the plan member, or an act of fraud committed by, or at the direction of, the plan member;

(3)    That arises while the plan member is operating a city vehicle with no authority to do so;

(4)    That asserts or alleges liability assumed by the plan member under a contract, unless the

APPENDIX 000017

(5)     contract is entered into at the request of the city;

(5)     That includes a joinder by the plan member of a claim or suit of the member against the city for benefits under the plan;

(6)     For punitive damages that are not recoverable against the city in law; or

(7)     For damages or other payments that the city is precluded from paying by law.

*Excluded loss* means any of the following:

(1)     Any loss that arises out of an excluded action;

(2)     Any loss the payment of which by the city is precluded by law;

(3)     Any loss arising out of a claim or suit resulting from a covered act that occurred before the plan took effect, if such claim or suit is barred by any statute of limitations;

(4)     Any loss arising out of a claim or suit resulting from a covered act that occurs while the plan is in effect if:

    (a)     The plan member experiencing the loss becomes legally obligated to pay the loss after the plan is terminated; and

    (b)     Such claim or suit is barred by any statute of limitations; or

(5)     Any loss arising out of a claim or suit resulting from a covered act that occurs after the plan is terminated.

*Loss* means the damages that a plan member is legally obligated to pay that arise from a claim or suit resulting from a covered act.

*Loss expenses* means any of the following:

(1)     The city's expenses in investigating or defending a claim or suit that may result in a plan claim;

(2)     The costs taxed against a plan member in a suit that results in a plan claim and any pre-judgment or post-judgment interest for which the plan member is liable;

(3)     The reasonable expenses of a plan member incurred at the city's request in connection with a claim or suit that may result in a plan claim; and

(4)     Any attorneys' fee ordered by a court to be paid by a plan member in a suit that results in a plan claim.

*Plan* means the City of Grapevine Officer and Employee Liability Plan, as established by this article.

*Plan claim* means any plan loss, together with the plan loss expenses, that result from the claim or suit giving rise to such plan loss.

*Plan loss* means loss that is not an excluded loss.

*Plan loss expenses* means any loss expenses, except those incurred in connection with an excluded action, and coverage determination expenses.

*Plan member* means an individual who at any time, whether before or after the establishment of the plan, is or has been:

(1)     An employee of the city;

(2)     A member of the city council;

(3)     A member of a city board, commission or committee created by charter, ordinance or resolution of the city, or the board of directors of any nonprofit corporation created under the authority of the city council as an instrumentality of the city; or

(4)     An individual who is a member of the city's volunteer police reserve or the city's volunteer fire department, or any other volunteer assisting the city pursuant to an official policy adopted or

APPENDIX 000018

approved by the city council.

*Risk management board* means the city's risk management board created by Article II of this chapter.

*(Ord. No. 87-52, § 1, 8-18-87)*

## Sec. 2-102. Plan established.

The city hereby establishes the city of Grapevine Officer and Employee Liability Plan, which shall consist of the policies, rights and duties embodied in this article. The plan shall be implemented and administered as provided by this article.

*(Ord. No. 87-52, § 2, 8-18-87)*

## Sec. 2-103. Defense and settlement.

(a)   The city will defend any suit, except an excluded action, against a plan member that results from a covered act, even if the suit is groundless or fraudulent.

(b)   The city may investigate, negotiate or settle any claim or suit against a plan member that results from a covered act, as the city determines necessary or appropriate, without the consent of such plan member.

*(Ord. No. 87-52, § 3, 8-18-87)*

## Sec. 2-104. Payment of plan claims.

(a)   Subject to subsection (b) of this section, the city will pay each plan claim.

(b)   To be entitled to payment by the city for any plan claim, a plan member must:

(1)   Notify the risk management board in writing as soon as practicable after receipt of written notice of any claim or suit that may result in a plan claim, and in any event not later than three working day after such receipt;

(2)   Cooperate with the risk management board in the investigation, negotiation or settlement of any claim or suit giving rise to the plan claim and in enforcing any right of contribution or indemnity against an individual or organization who may be liable to the city because of the payment by the city of a plan claim;

(3)   Assist in the conduct of any hearing or trial held in connection with a plan claim, including but not limited to attending the hearing or trial, securing and giving evidence, and obtaining the attendance of witnesses;

(4)   Not, except upon advice of the city attorney or when questioned by a police officer at the scene of an accident, give any oral or written statement or enter into any stipulation or agreement concerning a claim or suit resulting in a plan claim.

(5)   Not, except at the plan member's own expense, voluntarily make any payment, assume any obligation, or incur any expense with respect to any claim or suit resulting in a plan claim without the consent of the risk management board;

(6)   Deliver to the risk management board, promptly upon receipt, any demand, summons, notice or other process received by the plan member in connection with any claim or suit that may result in a plan claim;

(7)   Comply with the claims administration procedures of the risk management board; and

(8)   Perform the duties and comply with the requirements imposed on the plan member by this article or Article II of this chapter.

*(Ord. No. 87-52, § 4, 8-18-87)*

APPENDIX 000019

### Sec. 2-105. Legal representation.

(a)    The city will provide legal representation for a plan member in a claim or suit, except an excluded action, in which the asserted or alleged liability of the plan member results from a covered act.

(b)    If the city attorney determines that there exists a conflict of interest for the city attorney to represent a plan member, pursuant to subsection (a) of this section, the city will pay the reasonable fee of a private attorney to represent the plan member. The private attorney will be selected by the risk management board.

*(Ord. No. 87-52, § 5, 8-18-87)*

## Sec. 2-106. Subrogation.

If payment of a plan claim or legal representation is provided to a plan member under the plan, the city is subrogated to the plan member's rights of recovery against any individual or organization to the extent of the city's payment or liability for payment. A plan member shall execute and deliver to the risk management board such documents as are necessary to secure this right of subrogation in the sole opinion of the city attorney. A plan member shall not do anything after a plan claim is incurred to prejudice this right.

*(Ord. No. 87-52, § 6, 8-18-87)*

## Sec. 2-107. Determination of coverage.

(a)    If the city denies coverage under the plan to a plan member, the plan member may seek a determination by a court of proper jurisdiction of whether the member is entitled to such coverage.

(b)    If the court rules in favor of the plan member, the city shall provide such coverage to the plan member and shall reimburse the plan member for the coverage determination expenses.

*(Ord. No. 87-52, § 7, 8-18-87)*

## Sec. 2-108. No creation of cause of action.

Nothing contained in this article shall be construed as creating a right or cause of action against a plan member or as giving a right to a third party to institute or maintain a suit that would not otherwise exist under law as a legal claim against a plan member.

*(Ord. No. 87-52, § 8, 8-18-87)*

## Sec. 2-109. Administration of plan.

The risk management board is responsible for the administration of the plan in accordance with its terms, subject to the superior authority of the city council. In the course of carrying out this responsibility, the risk management board shall interpret and apply the provisions of this article.

*(Ord. No. 87-52, § 9, 8-18-87)*

## Sec. 2-110. Amendment, repeal and termination.

This article may be repealed or amended at any time, subject to existing rights of plan members under section 2-104 of this article, and the city may modify or terminate the plan at any time.

*(Ord. No. 87-52, § 10, 8-18-87)*

## Sec. 2-111. Conflicts with other ordinances.

This article shall not operate to repeal or affect any other ordinance of the city, except to the extent that the provisions thereof are inconsistent or in conflict with this article in which event, such inconsistent

APPENDIX 000020

or conflicting provisions in such other ordinance are hereby repealed.

*(Ord. No. 87-52, § 11, 8-18-87)*

## Sec. 2-112. Payments subject to appropriation.

All amounts payable under this article are subject to available and appropriated funding therefor, except that appropriation shall not be required to the extent funding is available therefor under Article II of this chapter.

*(Ord. No. 87-52, § 14, 8-18-87)*

## Sec. 2-113. No right to fund by plan member.

This article does not grant any right to any plan member in or to the insurance fund to be created for the City of Grapevine Self-Insurance and Risk Management Program.

*(Ord. No. 87-52, § 15, 8-18-87)*

## Secs. 2-114—2-120. Reserved.

FOOTNOTE(S):

--- **(4)** ---

**Editor's note—** *Ord. No. 87-52, adopted Aug. 18, 1987, did not specifically amend this Code; thus, the inclusion of §§ 1—11, 14 and 15 as Art. III, §§ 2-101—2-113, was at the discretion of the editor.* *(Back)*

APPENDIX 000021